**Prepared By:**
**Michael Jones, CA Bar No. 271574**
**M. Jones & Associates, PC**
**505 North Tustin Ave, Suite 105**
**Santa Ana, CA 92705**
**Telephone: (714) 795-2346**
**Facsimile:    (888) 341-5213**
**Email:  mike@MJonesOC.com**
**Attorneys for Debtor**

## UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA
### RIVERSIDE DIVISION

In Re:

AFFORDABLE AUTO REPAIR, INC.


        Debtor and Debtor-in-Possession.

**In Chapter 11 Proceedings**


**Case No. 6:19-BK-18367-MW**



**CHAPTER 11 PLAN OF**
**REORGANIZATION DATED 5**
**AUGUST 2020**


Disclosure Statement Hearing
Date: 8/13/2020
Time: 2:00 PM
Crtrm: 6C


Plan Confirmation Hearing
**See Disclosure Statement for Voting and**
**Objecting Procedures**

Date:   11/9/2020
Time:  2:00 PM
Crtrm: 6C, 411 West Fourth Street, Santa Ana,
CA 92701

1
2
3

## TABLE OF CONTENTS

4

I.      INTRODUCTION ................................................................................................4

II.     CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...........4

        A.     GENERAL OVERVIEW ...................................................................................4

        B.     UNCLASSIFIED CLAIMS ...............................................................................4

               1.     Administrative Expenses ..................................................................5

               2.     Priority Claims Consisting of Taxes and Debts Owed to
                      Governmental Units .........................................................................6

        C.     CLASSIFIED CLAIMS AND INTERESTS.........................................................8

               1.     Classes of Secured Claims................................................................8

               2.     Classes of Priority Unsecured Claims.............................................14

               3.     Classes of General Unsecured Claims ...........................................15

        D.     MEANS OF EFFECTUATING THE PLAN.........................................................20

               1.     Funding for the Plan.......................................................................20

               2.     Post-Confirmation Management ....................................................21

               3.     Disbursing Agent ...........................................................................22

III.    TREATMENT OF MISCELLANEOUS ITEMS.......................................................22

        A.     EXECUTORY AND UNEXPIRED LEASES .......................................................22

               1.     Assumptions ...................................................................................22

               2.     Rejections.......................................................................................22

        B.     CHANGES IN RATES SUBJECT TO REGULATORY APPROVAL .....................23

        C.     RETENTION OF JURISDICTION ....................................................................23

        D.     TERMINATION OF OBLIGATIONS IN THE EVENT OF UNPROCESSED PAYMENTS..........23

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

E.   EARLY PAY-OFF OF CLAIMS .................................................................. 23

F.   INTENTIONAL LIQUIDATION OF ASSETS ................................................ 23

**IV.   EFFECTS OF CONFIRMATION OF PLAN** .................................................. **24**

A.   DISCHARGE .......................................................................................... 24

B.   REVESTING OF PROPERTY IN THE DEBTOR ........................................... 24

C.   MODIFICATION OF PLAN ..................................................................... 24

D.   POST-CONFIRMATION STATUS REPORT ................................................ 25

E.   QUARTERLY FEES ................................................................................ 25

F.   POST-CONFIRMATION CONVERSION/DISMISSAL .................................. 25

G.   FINAL DECREE .................................................................................... 26

# I.    Introduction

On 9/23/2019 (the "Petition Date"), Affordable Auto Repair, Inc.  ("the Debtor" or "the Proponent") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code. The Debtor is in the automobile repair business. The Debtor continues as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108 of the Bankruptcy Code.

This document is the Chapter 11 Plan ("Plan") proposed by the Debtor ("the Debtor" or "the Proponent").  Sent to you in the same envelope as this document is the Disclosure Statement, which has been approved by the Court, and which is provided to help you understand the Plan.

This is a reorganization plan.  In other words, the Proponent seeks to accomplish payments under the Plan by restructuring their financial affairs and paying the creditors with post-petition earnings derived from revenue earned by the Debtor.  The Effective Date of the proposed Plan is the first day of the first full month that is at least 30 days after entry of the order confirming the plan.

# II.    Classification and Treatment of Claims and Interests

## A.    General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive.

## B.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are

1   automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such,

2   the Proponent has not placed the following claims in a class.

3

4                           **1.        Administrative Expenses**

5          Administrative expenses are claims for costs or expenses of administering the Debtor's

6   Chapter 11 case which are allowed under Code section 507(a)(1). The Code requires that all

7   administrative claims be paid on the Effective Date of the Plan, unless a particular claimant

8   agrees to a different treatment.

9          The Court must rule on all professional fees listed below before the fees will be owed.

10  For all fees, except Clerk's Office fees and U.S. Trustee's fees, the professional in question must

11  file and serve a properly noticed fee application and the Court must rule on the application. Only

12  the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

13         All of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan

14  are listed below:

15

16  <u>**Debtor's Counsel- M Jones & Associates, P.C.**</u>

17         NOTE: The estimated amount due to Debtor's Counsel stated below is a good faith

18  estimation of the total fees to be incurred through confirmation of the Chapter 11 plan.  The

19  actual amount could be more or less, and is subject to approval through a final fee application.

20         The Debtor owes an estimated total of $67,500 to the law firm of M Jones & Associates,

21  P.C.,  that qualifies for treatment under 11 U.S.C. 507(a)(1) as an administrative claim. The

22  claim will be paid with a $10,000 payment on the Effective Date, and the remaining balance, in

23  an amount to be proven by an approved fee application, will be paid by monthly installments

24  over the first 36 months of the plan, without interest, provided that payments are made as

1    provided herein.  In the event a payment is not made as provided, the balance remaining due at

2    the time of the missed payment will accrue interest at 18% per annum until paid in full.

3    **Office of the United States Trustee Fees**

4    The Debtor is estimated to owe a total of $4,875.00 to the Office of the United States

5    Trustee for quarterly fees at the time of confirmation.  These fees will be paid in full on or before

6    the Effective Date.

7

8    **Other Administrative Expenses**

9    The Debtor owes an Administrative Expense Claim for Taxes to the California

10    Department of Tax and Fee Administation (CDTFA) in the amount of $35,687.83.  This

11    administrative expense will be paid in full on or before the Effective Date.

12

13

14    **2.    Priority Claims Consisting of Taxes and Debts Owed to Governmental Units**

15    Priority claims consisting of taxes and debts owed to governmental units are certain

16    unsecured taxes, custom duties, and penalties owing to federal, state, and local governmental

17    units involved in this proceeding are set forth by 11 U.S.C. § 507(a)(8).  The Code requires that

18    each holder of a § 507(a)(8) priority claim receive the present value of such claim in deferred

19    cash payments, over a period not exceeding five years from the date of filing of the Order for

20    Relief.

21    Section 507(a)(8) also refers to property tax debt incurred before the commencement of

22    the case and last payable without penalty after one year before the petition date. 11 U.S.C.

23    507(a)(8)(B).

24

## Section 507(a)(8)(B) Property Tax Claims

There are no § 507(a)(8)(B) property tax claims in the case.

## Section 507(a)(8) Governmental Unit Tax Claims

All of the Debtor's § 507(a)(8) priority claims and their treatment under the Plan are listed below.  These claims may ultimately be wholly or partially disallowed through amendment of claim or an objection to claim.  The total amount owed to governmental units entitled to priority treatment will be administered under the plan as follows:

**California Department of Tax and Fee Administration**

The Debtor owes a total of $78,807 to the California Department of Tax and Fee Administration that qualifies for treatment under 11 U.S.C. 507(a)(8) as a priority claim.  The claim will be paid through monthly installments of $1,815 for the first 48 months following the Effective Date, and will be paid interest at the statutorily required rate.

**California Franchise Tax Board Claims**

The Debtor owes a total of $1,695 to the California Franchise Tax Board that qualifies for treatment under 11 U.S.C. 507(a)(8) as a priority claim.  The claim will be paid through monthly installments of $146 for the first 12 months following the Effective Date, and will be paid interest at the statutorily required rate.

## C.    Classified Claims and Interests

### 1.    Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.

**Class 1: Claims Secured Only on Real Property of the Debtor**

The Debtor owns no real estate, thus there are no Class 1 Claims in this proceeding.

**Class 2: Claims Secured on Property other than Real Property.**

The Debtor will pay each of the Class 2 Secured Claims on the terms set forth below:

# CLASS: 2A

**DESCRIPTION:**

*Class Description:*  Secured claim of On Deck Capital, Inc.

*Collateral description:* Accounts, general intangibles, and payment intangibles of the Debtor (hereinafter "the Intangible Property")

*Priority of security interest:* Second Priority Lien on the Intangible Property

*Collateral value:* $4,000.00

*Amount of secured claim as of 1/17/2020:* $163,057.88

**INSIDER:** No

**IMPAIRED:** Yes

**TREATMENT:**

The alleged secured claim of On Deck Capital, Inc. (hereinafter "OnDeck") allegedly

secured by the Second Priority Lien on the the Intangible Property in the alleged amount of

1   $163,057.88 (hereinafter the "OnDeck Second Priority Lien") is subject to removal and

2   "stripping" because it does not attach to any equity in the collateral whatsoever.  As such,

3   although it is claimed by OnDeck to be a secured claim, it shall be treated herein as completely

4   unsecured.

5          For purposes of the Chapter 11 plan only, the Second Priority Lien on the the Intangible

6   Property in the alleged amount of $163,057.88 (referred to herein as the "OnDeck Second

7   Priority Lien") shall be valued at zero, On Deck Capital, Inc. shall not have a secured claim, and

8   the OnDeck Second Priority Lien may not be enforced, pursuant to 11 U.S.C. §§ 506, 1123(b)(5)

9   and 1141.

10          Upon entry of a discharge, the OnDeck Second Priority Lien shall be voided for all

11   purposes, and upon application by Debtor, the court will enter an appropriate form of judgment

12   voiding the lien of OnDeck.

13          If Debtors' chapter 11 case is dismissed or converted to one under another chapter before

14   Debtor obtains a discharge, this provision shall cease to be effective and the OnDeck Second

15   Priority Lien shall be retained to the extent recognized by applicable nonbankruptcy law, and

16   upon application by the lienholder, the court will enter an appropriate form of order restoring the

17   Lien.

18          The entire claim of OnDeck will be administered as a general unsecured Class 4 claim as

19   provided *infra*.

20

21   //

22   //

23   //

24   //

1

2

## CLASS: 2B

3

**DESCRIPTION:**

4

*Class Description:*  Secured claim of Mr. Advance LLC

5

*Collateral description:* Accounts, general intangibles, and payment intangibles of the Debtor (hereinafter "the Intangible Property")

6

*Priority of security interest:* Third Priority Lien on the Intangible Property

7

*Collateral value:* $4,000.00

*Amount of secured claim as of 1/17/2020:* $42,305.39

8

9

**INSIDER:** No

10

**IMPAIRED:** Yes

11

12

**TREATMENT:**

13

The secured claim of Mr. Advance LLC (hereinafter "Mr. Advance") is in the amount of

14

$40,000 or such lessor amount as appropriate to account for payments or other reductions on the

claim that may have otherwise been applied against the obligation.

15

The secured claim of secured by the Third Priority Lien on the Intangible Property shall

16

be paid as provided within the approved settlement between the Debtor and Mr.Advance

17

attached to the Motion to Approve Compromise under Rule 9019 on the docket as item number

18

49 for this Chapter 11 proceeding and approved by the Court by Court Order on the docket as

19

item number 57.  A copy of the settlement is attached to the Disclosure Statement as Exhibit H,

20

and is incorporated by reference.

21

Once the Debtor has fully performed all the obligations under the Plan for treatment of

22

the Mr.Advance's claim, Mr. Advance shall release any and all liens it is holding against the

23

Intangible Property related to the Mr.Advance's claim, as well as all other assets of the

24

Reorganized Debtor and Mr. Advance shall have no further claims against the Debtor and the

Reorganized Debtor related to the Mr.Advance claim.

## CLASS: 2C

**DESCRIPTION:**

Class 2C consists of a single creditor, 1333 Bon View Corporation (hereinafter "Bon

View") that is the landlord and lessor of the commercial property located at 41604 Date Street,

Murrieta, CA 92562 and of which the Debtor is the lessee and tenant.  This obligation is secured

against a security deposit in the amount of $4,245.00, and in which Bon View holds the first

priority lien.  All obligations owed to Bon View by the Debtor arise out of the commercial lease

between the parties.

**INSIDER:** No

**IMPAIRED:** Yes

**TREATMENT:**

The Debtor assumes the lease obligation referenced herein within Class 2C, and the lease

shall remain in full force and effect except as modified herein.  The total amount necessary to

cure the default under the lease is $30,356.05, of which $4,245.00 is secured against the security

deposit and $26,111.05 is unsecured.  This amount may be lower at the Effective Date of the

plan to reflect payments made toward the arrears or other reductions in the amount due to Bon

View provided Debtor is able to provide documentary proof of such payments (e.g., cancelled checks, receipts, email/text confirmation of payment, etc.).

The full amount of the arrears shall be cured by the Debtor with consent of Bon View over the first 24 months of the Plan following the Effective Date, with interval payments of $1,265, paid on the first day of the month for no more than 24 consecutive months.

# CLASS: 2D

**DESCRIPTION:**

*Class Description:* Secured claim of AKF, Inc.

*Collateral description:* Accounts Receivable of the Debtor (hereinafter "the Accounts Receivable")

*Priority of security interest:* Fifth Priority Lien on the Accounts Receivable

*Collateral value:* $4,000.00

*Amount of secured claim as of 1/27/2020:* $15,713.68

**INSIDER:** No

**IMPAIRED:** Yes

**TREATMENT:**

The alleged secured claim of AKF, Inc. (hereinafter "AKF") allegedly secured by the Fifth Priority Lien on the the Accounts Receivable in the alleged amount of $15,713.68 (hereinafter the "AKF Fifth Priority Claim") is subject to removal and "stripping" because it

1    does not attach to any equity in the collateral whatsoever.  As such, although it is claimed by

2    AKF to be a secured claim, it shall be treated herein as completely unsecured.

3         For purposes of the Chapter 11 plan only, the Fifth Priority Lien on the the Accounts

4    Receivable in the alleged amount of $15,713.68 (referred to herein as the "AKF Fifth Priority

5    Claim") shall be valued at zero, AKF, Inc. shall not have a secured claim, and the AKF Fifth

6    Priority Claim may not be enforced, pursuant to 11 U.S.C. §§ 506, 1123(b)(5) and 1141.

7         Upon entry of a discharge, the AKF Fifth Priority Claim shall be voided for all purposes,

8    and upon application by Debtor, the court will enter an appropriate form of judgment voiding the

9    lien of AKF.

10        If Debtors' chapter 11 case is dismissed or converted to one under another chapter before

11    Debtor obtains a discharge, this provision shall cease to be effective and the AKF Fifth Priority

12    Claim shall be retained to the extent recognized by applicable nonbankruptcy law, and upon

13    application by the lienholder, the court will enter an appropriate form of order restoring the Lien.

14        The entire claim of AKF will be administered as a general unsecured Class 4 claim as

15    provided *infra*.

16

17

18    # CLASS: 2E

19

20    **DESCRIPTION:**

*Class Description:*  Secured claim of EBF Partners, LLC d/b/a Everest Business Funding

21    *Collateral description:* Accounts, general intangibles, and payment intangibles of the Debtor
(hereinafter "the Intangible Property")

22    *Priority of security interest:* First Priority Lien on the Intangible Property

23    *Collateral value:* $4,000.00

*Amount of secured claim as of 1/17/2020:* $30,375.00

24

**INSIDER:** No

**IMPAIRED:** Yes

**TREATMENT:**

The amount of the allowed secured claim of EBF Partners, LLC d/b/a Everest Business Funding (hereinafter "Everest") secured by the First Priority Lien on the Intangible Property shall be in the amount of $30,375 (hereinafter the "Everest First Priority Lien"), or such lessor amount as appropriate to account for payments or other reductions on the claim that may have otherwise been applied against the obligation.

The Everest First Priority Lien shall be paid as agreed by the Stipulation for Plan Treatment between the Debtor and Everest, on the docket as item number 60 for this Chapter 11 proceeding.  A copy of the stipulation is attached to the Disclosure Statement as Exhibit F, and is incorporated by reference.

Once the Debtor has fully performed all the obligations under the Plan for treatment of the Everest First Priority Lien, Everest shall release any and all liens it is holding against the Intangible Property related to the Everest First Priority Lien of Everest, as well as all other assets of the Reorganized Debtor and Everest shall have no further claims against the Debtor and the Reorganized Debtor related to the Everest First Priority Lien.

## 2.    Classes of Priority Unsecured Claims

**Class 3: None.**

There are no Class 3 claims in this proceeding.

### 3.    Classes of General Unsecured Claims

**Class 4: General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). See Exhibit E of the Disclosure Statement for detailed information about each general unsecured claim.

*Multiple Treatment Possibilities for Class 4 Members:*  The Debtor proposes to pay the Class 4 members differently depending on whether the Class 4 member supports or opposes the confirmation of the Chapter 11 Plan.  By way of summary, Class 4 members that support the confirmation of the Chapter 11 Plan are paid 8% of their claims over the first 36 months of the plan with 4% interest; Class 4 members that oppose the conformation of the Chapter 11 Plan are paid 4% of their claims in month 48 of the plan without any interest at all.

As set forth in more detail below, Class 4 members supporting confirmation are referred to as Consenting Class 4 Members and those opposing confirmation are referred to as Adverse Class 4 Members.  The treatment for Consenting Class 4 Members is described hereinafter as "Class 4 Treatment A"; the treatment for Adverse Class 4 Members is described hereinafter as "Class 4 Treatment B."

Because Consenting Class 4 Members receive twice the dividend (8%) of Adverse Class 4 Members (4%), and are paid several years before Adverse Class 4 Members, creditors are highly incentivized to support the Debtor's Chapter 11 Plan.  As described more fully hereinafter, Creditors that do not vote at all are at risk of receiving the treatment for Adverse Class 4 Members if Class 4 does not garner enough votes for Class 4 to vote in favor of confirmation of the Chapter 11 Plan.  Therefore, it is advantageous for Class 4 creditors to affirmatively cast a ballot in favor of the plan.

## Treatment for Class Members Supporting Confirmation of the Chapter 11 Plan

### CLASS 4 TREATMENT A

***Treatment in the Event that Class Member Votes IN FAVOR of Confirmation of the Plan and supports confirmation of the Chapter 11 Plan:***

The Debtor proposes to pay those Class 4 members <u>THAT VOTE IN FAVOR OF</u> the plan and who support the confirmation of the Debtor's Chapter 11 Plan (hereinafter referred to as a "Consenting Class 4 Member") on the following terms, referred to herein as "Class 4 Treatment A".  Only Consenting Class 4 Members will always receive Class 4 Treatment A; other class members could receive Class 4 Treatment B as set forth *infra*.

Class 4 Treatment A allows Consenting Class 4 Members to be paid a dividend of 8.0% of their allowed claims, at 4% interest per annum, with quarterly payments for the first 36 months following the Effective Date.  Each of the Consenting Class 4 Members will be paid on a *pro rata* basis together with all other creditors eligible for Class 4 Treatment A.  The summary table below shows the result in the event that all creditors in Class 4 are eligible for Class 4 Treatment A:

| CLASS Number | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT | |
|---|---|---|---|---|---|
| 4 (Treatment A) | General Unsecured Claims<br><br>Total Amount of claims:<br><br>$318,241.84 | N | **Y** | Payment Interval<br>Payment Amount<br>Begin Date<br>End Date<br>Interest Rate | Quarterly<br>$2,261.64<br>Effective Date<br>12th Payment<br>4.0% |

| | | | | Total Payout $ | $25,459.35 |
| | | | | Total Payout w/ Interest | $27,139.66 |
| | | | | Total Payout % | 8.0% |

## Treatment for Class Members Opposing Confirmation of the Chapter 11 Plan

### *CLASS 4 TREATMENT B*

***Treatment in the Event that Class Member votes to reject the Plan and/or opposes confirmation of the Debtor's Plan:***

If a Class 4 member <u>VOTES AGAINST</u> the plan and/or otherwise opposes the confirmation of Debtor's Plan  (e.g., objecting to the plan or campaigning for others to vote against the plan), such Class 4 member will receive Class 4 Treatment B as set forth herein.  Said Class 4 members voting against confirmation of the plan or otherwise opposing the confirmation of Debtor's Plan are hereinafter referred to as an "Adverse Class 4 Member".

Class 4 Treatment B provides that Adverse Class 4 Members will be paid a total of 4% of their claims, without interest, in the 48th month following the Effective Date.

## Treatment for Class Members that Do Not Cast a Ballot

Class 4 members are highly incentivized to cast a ballot in favor of the Chapter 11 Plan by having their claim paid a higher dividend and faster in the plan.  Nevertheless, some Class 4

members may still not cast a ballot.  The treatment for non-voting Class 4 Members is provided as follows:

***Treatment in the event that Class Member does not cast a ballot but does not oppose confirmation of the Debtor's Plan, and Class 4 VOTES TO ACCEPT confirmation of Debtor's Plan:***

If no vote is cast by a Class 4 member <u>and</u> the Class 4 member does not oppose the confirmation of Debtor's Plan (e.g., objecting to the plan or campaigning for others to vote against the plan) *<u>and Class 4 nevertheless votes to accept the confirmation of Debtor's Plan without the vote of said Class 4 member</u>*, such Class 4 member will receive the same treatment as Class 4 Treatment A that is provided to Consenting Class 4 Members.  Class members should carefully note that this treatment only applies if Class 4 accepts the Chapter 11 Plan.

***Treatment in the Event that Class Member does not cast a ballot and Class 4 DOES NOT VOTE IN FAVOR of confirmation of Debtor's Plan:***

If no vote is cast by a Class 4 member *<u>and Class 4 does not vote to accept the confirmation of Debtor's Plan</u>*, such Class 4 member will receive the same treatment as Class 4 Treatment B that is provided to Adverse Class 4 Members.

**Class 5: Interest Holders.**

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.  If the Debtor is a corporation, entities holding preferred or common stock in the Debtor

are interest holders.  If the Debtor is a partnership, the interest holders include both general and limited partners.  If the Debtor is an individual, the Debtor is the interest holder.

In this proceeding, the Debtor is a corporation with one shareholder- Douglas Blickhan, who is the sole interest holder.

**Class 6: Disputed, Contingent, and Unliquidated Claims.**

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS JANUARY 27, 2020. A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim. An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest. Pursuant to 11 USC 1111(a), those claims or interests that were scheduled as disputed, contingent, or unliquidated by the Debtor in their petition and schedules are treated as unfiled claimed unless the creditor filed a claim in the case on or before the Claims Bar Date.

Class 6 members do not have allowed claims in this bankruptcy proceeding. Accordingly, pursuant to Federal Rules of Bankruptcy Procedure Rule 3003(c)(2), those claims or interests that were scheduled as disputed, contingent, or unliquidated by the Debtor in their petition and schedules shall not be treated as a creditor for purposes of voting and distribution.

Creditors and interest holders in Class 6, if any, are listed in Exhibit E of the Disclosure Statement, and are subject to having their debts and interests discharged under 11 USC 1141 without receiving any distribution under the Chapter 11 Plan.

**Parties in Class 6 may not seek any payment or engage in any collection activity whatsoever from the Debtor on their alleged debt for any reason whatsoever for a period of 60 months following the Effective Date, conditioned upon the Debtor making payments as required under the terms of the Chapter 11 Plan.** This restriction is to ensure that the Debtor is able to perform under the terms of the Chapter 11 Plan in funding 60 months of payments for the benefit of the allowed claims belonging to secured and unsecured creditors in the case, without having to defend against claims that were not filed in the Debtor's bankruptcy case.

### D.    Means of Effectuating the Plan

#### 1.    Funding for the Plan

The funding of the Plan will be accomplished through "available cash" on the Effective Date of the Plan, the injection of $85,000 in "added value" from the equity holder, and "future disposable income" obtained through the Debtor's business affairs in operating an automotive repair business.

The Debtor projects an annual income from its business affairs in the amount of $1,114,892. This amount is projected from the actual income derived from the operations of the Debtor in the nine months preceding the preparation of this Chapter 11 Plan; this nine-month period constitutes the entire duration of the Debtor's Chapter 11 case. The Debtor calculated the average gross sales over those nine months, which was determined to be $1,565,681.

Because the Debtor is involved in retail sales (e.g., the selling of automotive repair parts), it is necessary to factor in the cost of goods sold to determine a gross profit. Therefore, after determining the average gross sales, the Debtor then calculated the average cost of goods sold

1    over those nine months. The average cost of goods sold was determined to be $450,789 as an

2    annual expense.

3        Finally, by subtracting the annual cost of goods sold from the annual gross sales, the

4    Debtor was able to determine a gross profit of $1,114,892. The gross profit amount was them

5    projected forward for the four years of the plan, but with an added $85,000 from the equity

6    holder in the first year of the plan.  As such, the first year of the plan has usable funds of

7    $1,199,892, and the following years have total income of $1,114,892.

8        The Debtor also projected the expenses it will incur each year of the plan in order to

9    determine the annual surplus funds that roll forward to the following year.  The expenses are

10   based on the averages for the actual expenses in each category over the same nine months

11   preceding the preparation of the Chapter 11 Plan. The expenses were reported each month during

12   the case on the Debtor's monthly operating reports.  These expenses are projected to remain

13   static over the 48 month plan, except for salaries and wages, which increase at a modest 1.5% per

14   year to accommodate raises and inflation.

15       Based on the debtor's historical sales and expenses, plus the added value injection from

16   the equity holder, the plan is appropriately funded and the interested parties should be paid as

17   provided within the plan.

18

19

20       **2.    Post-Confirmation Management**

    The Debtor shall remain in possession of the Debtor's assets, and shall perform all

21
    functions necessary to consummate the Plan, including the operation of Debtor's business
22
    activities, post-confirmation.
23

24

### 3.      Disbursing Agent

The Reorganized Debtor will act as the disbursing agent under the Plan.  The disbursing agent shall serve without bond and shall not be compensated for distribution services rendered and expenses incurred pursuant to the Plan.

## III.    Treatment of Miscellaneous Items

### A.      Executory and Unexpired Leases

#### 1.      Assumptions

The Debtor has one lease which the Debtor is obligated as lessee—its commercial lease for the property where the Debtor conducts its business affairs.  This lease is assumed, and the arrears are treated as Class 2C with the consent of the lessor.

The Debtor may also have routine office or "shop" equipment such as copiers and machinery arising in the ordinary course of business, and all such leases are also assumed. Debtor reserves the right to supplement this assumption list on proper notice to the counter party to such agreement(s)

#### 2.      Rejections

The Debtor has rejected the executory contract with Avitus Group related to employee leasing.  Damages for rejection of this contract are a scheduled claim within Class 4 in the amount of $103,020.

There are no other executory contracts or unexpired leases which will be rejected in this proceeding.

**B.      Changes in Rates Subject to Regulatory Approval**

This provision is not applicable in this proceeding.

**C.      Retention of Jurisdiction**

The Court will retain jurisdiction to the extent provided by law.

**D.      Termination of Obligations in the event of Unprocessed Payments**

Any cash, checks or other property which is distributed pursuant to the Plan which is: a) returned as undeliverable without a proper forwarding address; b) which was not mailed or delivered because of the absence of a proper address to which to mail or deliver; or c) any payment which is not negotiated within 60 days of the date of such check shall be paid over to Reorganized Debtor and Reorganized Debtor shall have no further obligations to such creditor. If the obligation of the creditor is secured against collateral and terminated under this provision, the lien securing the obligation shall also be void and terminated.

**E.      Early Pay-Off of Claims**

The Debtor may prepay any obligation under the Plan early without any penalty or additional costs, including, but not limited to, payment of any interest that would have accrued if the obligation had been paid under the interval terms of the Plan.

**F.      Intentional Liquidation of Assets**

The Debtor may elect to liquidate their property at any time following the Effective Date if it is so deemed in the sole judgment, discretion, and opinion of the Debtor to be in best interests of the Debtor's ability to fulfill the obligations under the Plan.  In the event of the liquidation of a secured asset, all liens related to the asset being liquidated must be paid in full at the

1  time of the liquidation.  The Debtor may thereafter use the net proceeds from the sale of the asset in a

2  manner the Debtor believes will best allow them to meet the obligations under the Plan, including, but

3  not limited to, acquisition of other property, debt retirement of other claims under the Plan, or

4  expansion of their financial activities.

5

6

7

8  ## IV.    EFFECTS OF CONFIRMATION OF PLAN

9  ### A.    Discharge

10  This Plan provides that the Debtor shall be discharged of liability for payment of debts

11  incurred before confirmation of the Plan, to the extent specified in 11 U.S.C. § 1141, as soon as a

12  discharge is allowed under Title 11 of the United States Code. However, the discharge will not

13  discharge any further liability imposed by the Plan.

14

15  ### B.    Revesting of Property in the Debtor

    Except as provided elsewhere in the Plan, the confirmation of the Plan revests all of the

16  property of the estate in the Debtor.

17

18  ### C.    Modification of Plan

19  The proponent and parties in interest may seek to modify the Plan pursuant to the

20  provisions of 11 U.S.C. § 1127(e).

21  The Proponent of the Plan may modify the Plan at any time before confirmation.

22  However, the Court may require a new disclosure statement and/or re-voting on the Plan.

23  The Proponent of the Plan may also seek to modify the Plan at any time after

24

confirmation only if the Court authorizes the proposed modifications after notice and a hearing.

### D.    Post-Confirmation Status Report

Unless otherwise ordered within the confirmation order, within 120 days of the entry of the order confirming the Plan, Debtor shall file a status report with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the twenty largest unsecured creditors, and those parties who have requested special notice. Further status reports shall be filed every 120 days and served on the same entities.

### E.    Quarterly Fees

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan. Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal/conversion to Chapter 7.

### F.    Post-Confirmation Conversion/Dismissal

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing the Plan. If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to revoke confirmation within 180 days after the entry of the order of confirmation.

### G.    Final Decree

The Chapter 11 Plan provides that a discharge will be entered by the Court as soon as the Debtor is eligible for a discharge.

Once the estate has been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponent, or other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case.

Executed this 17 September 2020.

**Name and Identity of Plan Proponent**

Affordable Auto Repair, Inc.

Douglas Blickhan

**Identity of Plan Proponent's Counsel:**

**M Jones & Associates, PC**

By: Michael Jones
*Debtor's Counsel*

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
505 N Tustin Ave, Ste 105, Santa Ana, CA 92705

A true and correct copy of the foregoing document entitled (*specify*):
**CHAPTER 11 PLAN OF REORGANIZATION DATED 5 AUGUST 2020**
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 17
September 2020. I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 17 September 2020 I served the following persons and/or entities at the last known addresses in this
bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United
States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that
mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 17 September 2020.  I
served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in
writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a
declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the
document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 17 September 2020 | Michael Jones | /s/ Michael Jones |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

**F 9013-3.1.PROOF SERVICE**

ECF Mailing List

- **Michael W Davis**     mdavis@dtolaw.com, jmartinez@dtolaw.com
- **Abram Feuerstein**     abram.s.feuerstein@usdoj.gov
- **Everett L Green**     everett.l.green@usdoj.gov
- **Michael Jones**     mike@mjonesoc.com, 2651971420@filings.docketbird.com
- **Christine Levi**     bankruptcy@ondeck.com
- **Martin W. Phillips**     marty.phillips@att.net
- **Cameron C Ridley**     Cameron.Ridley@usdoj.gov
- **Sara Tidd**     sara@mjonesoc.com
- **United States Trustee (RS)**     ustpregion16.rs.ecf@usdoj.gov

Label Matrix for local noticing
0973-6
Case 6:19-bk-18367-MW
Central District of California
Riverside
Thu Sep 17 09:04:23 PDT 2020

Affordable Auto Repair, Inc
41604 Date Street, Suite A
Murrieta, CA 92562-7057

M. Jones & Associates, PC
505 N Tustin Ave, Ste 105
Santa Ana, CA 92705-3735

On Deck Capital, Inc.
101 W. Colfax Ave., 9th Floor
Denver, CO 80202-5167

Riverside Division
3420 Twelfth Street,
Riverside, CA 92501-3819

(p)1333 BON VIEW CORP
1261 N LAKEVIEW AVE J 519
ANAHEIM CA 92807-1834

AKF, Inc.
dba FundKite
88 Pine Street
New York, NY 10005-1807

BBVA Compass
15 20th St S
Birmingham AL 35233-2090

BBVA USA
PO Box 10566
Birmingham, AL 35296-0001

California Department of Tax & Fee Administr
Special Ops, MIC: 55
PO Box 942879
Sacramento, CA  94279-0055

California Department of Tax and
Fee Administration
Account Information Group, MIC:29
P.O. Box 942879
Sacramento, CA 94279-0029

California Dept. of Tax and Fee Administrati
Collections Support Bureau, MIC: 55
PO Box 942879
Sacramento, CA  94279-0055

Celtic Bank
268 South State St., Ste 300
Salt Lake City, UT 84111-5314

DLI Assets Bravo, LLC
sucessor to Quarterspot)
550 NORTH BRAND BOULEVARD STE 2000
Glendale, CA 91203-1935

Daka Capital Group, Inc.
10 BROWER AVENUE
Woodmere, NY 11598-1703

Douglas Eugene Blickhan
45331 Via Jaca
Temecula, CA 92592-1305

EBF Partner, LLC
dba Everest Business Funding
5 West 37th Street, Ste 1100
New York, NY 10018-6222

EBF Partners, LLC d/b/a Everest Business Fun
c/o Laura Jackson
8200 N.W. 52nd Terrace, Suite 200
Doral, FL 33166-7852

Eifell Ditimus
35587 Cloche Drive
Winchester, CA 92596-8549

FRANCHISE TAX BOARD
BANKRUPTCY SECTION MS A340
PO BOX 2952
SACRAMENTO CA 95812-2952

INTERNAL REVENUE SERVICE
P.O. BOX 7346
PHILADELPHIA,PA 19101-7346

Kabbage Inc.
c/o CSC Lawyers Incorporating Servc
2710 GATEWAY OAKS DR STE 150N
Sacramento, CA 95833-3502

Kalamata Capital Group, LLC
C/O CORPORATION SERVICE COMPANY
80 STATE STREET
Albany, NY 12207-2541

LoanMe, Inc
1900 S. State College Blvd Suite 300
Anaheim, CA 92806-6152

LoanMe, Inc.
c/o CSC Lawyers Incorporating Servc
2710 GATEWAY OAKS DR STE 150N
Sacramento, CA 95833-3502

Mr. Advance LLC
3110 37TH AVE #202
Long Island City, NY 11101-2112

On Deck Capital, Inc.
901 N Stuart Street, Ste 700
Arlington, VA 22203-4129

On Deck Capital, Inc.
c/o Christine Levi
101 West Colfax Ave., 10th Floor
Denver, CO 80202-5167

Queen Funding LLC
101 Chase Ave, Ste 208
Lakewood, NJ 08701-4762

(p)US BANK
PO BOX 5229
CINCINNATI OH 45201-5229

Bates: 0029

United States Trustee (RS)
3801 University Avenue, Suite 720
Riverside, CA 92501-3255

WebBank
Loan Builder
c/o Swift Financial LLC
3505 Silverside Rd
Wilmington DE 19810-4905

West Coast Business Capital, LLC
116 NASSAU STREET, 8TH FLOOR
New York, NY 10038-2402

Michael Jones
M Jones & Assoicates, PC
505 N Tustin Ave Ste 105
Santa Ana, CA 92705-3735

Sara Tidd
M. Jones & Associates, PC
505 N. Tustin Ave., Suite 105
Santa Ana, CA 92705-3735


The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).


1333 Bon View Corporation
1261 N LAKEVIEW AVE J 519
Anaheim, CA 92807

U.S. Bank National Association
Bankruptcy Department
PO Box 108
St. Louis MO 63166-0108


The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.


(u)Courtesy NEF

End of Label Matrix
Mailable recipients    34
Bypassed recipients     1
Total                  35